IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| PAPER ALLIED INDUSTRIAL CHEMICAL AND ENERGY WORKERS INTERNATIONAL UNION; PAPER ALLIED INDUSTRIAL CHEMICAL AND ENERGY WORKERS OF IDAHO LOCAL UNION NO. 8-652, | ) ) ) ) ) ) | Case No. CV-04-194-E-BLW **MEMORANDUM DECISION** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF ENERGY, a Government Agency; SPENCER ABRAHAM, Secretary of United States Department of Energy; ELIZABETH D. SELLERS, Manager United States Department of Energy Idaho Operations Office, | ) ) ) ) ) ) ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## INTRODUCTION

The Court heard oral argument on the DOE's motion to dismiss and PACE's

motion for summary judgment on August 28, 2006, and took the motions under

advisement.  In addition, defendants have filed a motion to affirm the decision of

the DOL's Arbitration Review Board (ARB).  The Court finds that oral argument

is unnecessary on that motion.  For the reasons expressed below, the Court will

grant defendants' motions, and deny PACE's motion for summary judgment.


## ANALYSIS

### 1.    Motion for Summary Judgment

The Court will not repeat the factual background of this case, which has

been set forth in past decisions.  Plaintiff PACE argues that the combined language

of the Reorganization Plan, the President's Message and the legislative history

establishes that the contracting agencies – and not the DOL – have the authority to

make final and binding coverage determinations under the Davis Bacon Act

(DBA).

The Court's analysis of PACE's argument is governed by *Chevron, U.S.A.,*

*Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984).  That case

sets forth a two-step approach to evaluate whether an agency has overstepped the

authority given to it by Congress.  The Court first examines the governing statute

itself to determine whether Congress has spoken directly to the precise question.

*Id*. at 842.  If the intent of Congress is clear, that is the end of the inquiry because

agencies (and courts reviewing their actions) must give effect to the

unambiguously expressed intent of Congress. *Id.* at 842-43.  If an agency's

**Memorandum Decision and Order – Page 2**

regulation is in conflict with the plain language of the statute, reviewing courts do not owe deference to the agency's interpretation.  *Id.*

Second, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."  *Id*. at 843.  "In determining whether an agency's construction is permissible, the court considers whether Congress has explicitly instructed the agency to flesh out specific provisions of the general legislation, or has impliedly left to the agency the task of developing standards to carry out the general policy of the statute."  *Earth Island Institute v. Ruthenbeck*, 2006 WL 2291168 (9th Cir. August 10, 2006)(quoting *Tovar v. U.S. Postal Serv*., 3 F.3d 1271, 1276 (9th Cir.1993)).  "When relevant statutes are silent on the salient question, we assume that Congress has implicitly left a void for an agency to fill. We must therefore defer to the agency's construction of its governing statutes, unless that construction is unreasonable."  *Chevron*, 467 U.S. at 843-44.

In this case, Congress has authorized the DOL to promulgate regulations "for contractors . . . engaged in . . . completing . . . public works . . . ."  40 U.S.C. § 3145(a).  Congress also passed the Reorganization Act, authorizing the President to make changes in agency operations to, among other things, "increase . . . efficiency."  5 U.S.C. § 901(a)(3).

**Memorandum Decision and Order – Page 3**

Pursuant to his authority under the Reorganization Act, President Truman authorized the DOL to pass regulations "to assure coordination of administration and consistency of enforcement of the labor standards provisions of . . . [the DBA] . . . ." *Reorganization Plan No. 14 of 1950*, 5 U.S.C. App. at pp. 134-36. The President chose the DOL as the central agency for DBA enforcement because the enforcement actions of various agencies "vary widely in character and effectiveness." *Id.* at p. 136.

To "assure . . . consistency of enforcement," the President gave the DOL authority to "prescribe appropriate standards . . . which shall be observed by [the federal agencies responsible for administration of the DBA]." *Id*. at p. 134. These DOL standards would "govern" the enforcement activities of the various agencies. *Id.*

Pursuant to this authority, the DOL passed regulations setting up a process for deciding DBA issues. Under this framework, "the contracting agency . . . has the initial responsibility for determining whether a particular contract is subject to the [DBA]." *Universities Research Ass'n v. Coutu*, 450 U.S. 754, 760 (1981); *see also,* 29 C.F.R. § 5.5(a). Here, that means that the DOE makes the initial determination whether the work in question is subject to the DBA.

The DOE's determination is "subject to administrative review" by the DOL.

**Memorandum Decision and Order – Page 4**

*Coutu*, 450 U.S. at 760.  That review is conducted initially by the DOL's Wage and Hour Administrator (WHA).  29 C.F.R. § 5.13.  A decision by the WHA may then be appealed to the DOL's Administrative Review Board (ARB), which renders a final agency decision on the matter.  *Id*. at § 7.1(d).

To determine if the DOL has exceeded its authority by setting up this review process, the Court must, under *Chevron,* examine first the purported source of that authority to see if it is expressly conferred.  The Reorganization Plan gives the DOL the authority to prescribe mandatory standards to "govern" the enforcement activity of the various agencies and "assure consistency of enforcement."

While this language does not expressly confer authority on the DOL to review decisions of contracting agencies concerning DBA coverage issues, the language would be drained of meaning if interpreted any other way.  If the DOL is powerless to correct agency decisions at odds with the DOL's standards, the entire goal of the Reorganization Plan – consistency – would be defeated.  On the other hand, granting review authority to DOL effectuates the Plan's goal and allows the very agency that drafted the regulations to ensure that they are consistently enforced.  That is what the President contemplated when he directed that the DOL standards are to "govern the enforcement activities of the various Federal Agencies . . . ."  *See Reorganization Plan* at p. 136.

**Memorandum Decision and Order – Page 5**

PACE responds that Congress had a different view, and cites language from the Senate Committee on Expenditures in the Executive Departments stating that "the enforcement and administration of labor standards are not transferred by the [Reorganization Plan] but remain vested in the individual agencies and departments of the Government."  *See* S. Rep. No. 1546, 81st Cong., 2d Sess., 3 (1950).  PACE asserts that this sentence means that the Reorganization Plan was not intended to vest review authority in DOL.

The sentence cited by PACE was part of an analysis by the Senate Committee of the conclusions of an advisory group known as the Hoover Commission.  That group recommended that all enforcement activity be taken from the contracting agencies and transferred to the DOL.  *Id.* at 1-3.  The Senate Committee noted that the Plan rejected that recommendation, emphasizing – in the sentence quoted by PACE above – that enforcement and administration authority remains vested with the contracting agencies.

That sentence explains that the DOL, by taking all authority for setting standards, was not also divesting the agencies of all authority for enforcement, as the Hoover Commission recommended.  But the sentence does not say that the DOL lacks all power to review agency decisions.  PACE reads too much into the sentence, imbuing it with a broad meaning that its words in context cannot bear.

**Memorandum Decision and Order – Page 6**

Thus, under the second prong of *Chevron*, the Court finds that the DOL's regulations allowing the DOL to review DBA coverage issues are reasonable and effectuate the intent of Congress and the President as expressed in the Reorganization Act and the Reorganization Plan.  The Court will therefore deny PACE's motion for summary judgment on this ground.

PACE also seeks a summary judgment that the ARB improperly relied upon an All Agency Memorandum (AAM 155) issued by the DOL's Acting Administrator.  PACE asserts that reliance on AAM 155 was improper because that document was not issued in compliance with the rule-making procedures dictated by the Administrative Procedures Act (APA).

AAM 155 contains a brief cover letter from the DOL's Acting Administrator John Fraser and an attachment consisting of a prior DOL decision in the Bunker Hill case.  Fraser's cover letter informs all contracting agencies of the Bunker Hill decision, and asks them to review their procedures "to ensure that they comport with [DOL] policy."

AAM 155 was cited by the ARB in its decision affirming the WHA.  The ARB also concluded that the WHA's decision was "consistent with . . . the plain language of [29 C.F.R.] section 5.2(I)-(k) . . . ."  *See ARB Decision* at p. 8.

In other words, the ARB decision was based on (1) current regulations, and

(2) a past DOL decision in the Bunker Hill case.  Because AAM 155 contains no analysis of its own, the ARB's citation to it was akin to citing the Bunker Hill decision directly.  The ARB does not exceed its authority by citing past DOL decisions.  The Court therefore rejects PACE's challenge to this aspect of the ARB decision.

For all of these reasons, the Court will deny PACE's motion for summary judgment.

**2.    DOE's Motion To Dismiss**

The DOE seeks dismissal of PACE's claims, which allege that the DOE improperly reversed itself to adopt the decision of the WHA.  Far from being improper, the DOE's decision was in full accord with the Reorganization Plan's goal of consistency, discussed above.  The Court can find no rule or policy that would strip the DOE of discretion to align its decisions with those of the DOL on DBA coverage issues.[1]  Accordingly, the DOE's motion shall be granted.

**3.    Motion To Affirm**

The defendants have filed a motion to affirm the decision of the ARB.  For the reasons expressed above, the Court will grant that motion.

---

[1]  The Court is not holding here that DOE is required to adopt DOL decisions.  If the DOE disagrees with DOL decisions, the DOE may seek a reconciliation of the conflicting views with the Attorney General pursuant to Executive Order No. 12146.

**Memorandum Decision and Order – Page 8**

4.      <u>**Conclusion**</u>

Because the Court has decided all issues in this case in favor of defendants,

the Court will enter a Judgment in a separate document as required by Rule

58(a)(1).

DATED:  **August 30, 2006**



B. LYNN WINMILL
Chief Judge
United States District Court